### VILLAGE OF CLINTON v. OTTER TAIL POWER COMPANY.[1]

May 24, 1918.

No. 20,898.

**Municipal corporation — electric light — construction of contract.**

> An order of the district court requiring a public service corporation, under a contract, to furnish a municipal corporation with a current of electricity for lights for 17 hours each day where the contract calls for about 11 hours' service, exceeds the terms of the contract and is unauthorized.

Action in the district court for Big Stone county to require defendant to perform its contract and supply electric light and power to plaintiff village. Plaintiff obtained an order requiring defendant to show cause why it should not be required specifically to perform the conditions of its contract with plaintiff. The matter was heard by Flaherty, J., who ordered that during the pendency of the action defendant furnish plaintiff with electric light and power from approximately 6 a. m. continuously until 11 p. m. each and every day until further hearing in the cause. From that order, defendant appealed. Reversed.

*N. F. Field,* for appellant.

*Ciff & Purcell,* for respondent.

[1]Reported in 167 N. W. 794.

QUINN, J.

The plaintiff is an incorporated village with a population of 450, and with all the rights, powers and privileges with reference to furnishing lights and water for its use and that of its citizens possessed by similar municipalities under the statute. The defendant is a public service corporation organized under the laws of this state, engaged in the generation and sale of electric power for public and private use and owns and operates two large water power plants on the Otter Tail river at or near the city of Fergus Falls. It also owns certain reserve steam plants for use in connection with the water power.

On July 5, 1914, the defendant entered into a contract with the plaintiff, whereby it agreed and undertook, upon the terms and conditions therein expressed, including the right to maintain poles, conduits, cables and wires in and over the streets and alleys of the village, to erect a street lighting system within the village, and operate it during each and every night, and to furnish power continuously for pumping water for plaintiff's pumping plant.

There is no controversy over the existing conditions other than as to the ultimate fact whether defendant, under the circumstances, was able to furnish sufficient power to give the plaintiff an all-day service as provided in its contract. The appellant furnished electric power to the plaintiff in accordance with its contract until the summer of 1917, when it ceased to furnish power or light to the village except from about 5:30 p. m. to 10:30 p. m. At this time the greater portion of the inhabitants of the village was dependent upon it for light and power for use in the homes and places of business.

Based upon the complaint and an affidavit thereto annexed the plaintiff procured an order to show cause why the defendant should not comply with the terms and conditions of its contract, in response to which the defendant appeared and submitted two affidavits setting forth its inability to perform the contract or to furnish the plaintiff any greater service than it was then doing on account of the stage of water in the river. Thereupon the court made an order requiring that from and after February 5, 1918, and during the pendency of the final determination of this action, the defendant furnish to plaintiff electric light and power from 6 o'clock in the morning continuously until 11 o'clock at night each

and every day until the final hearing of the cause. From such order this appeal was taken.

The Otter Tail river is fed from a large number of lakes. The defendant has contracts with a number of towns in that vicinity to supply them with current. The summer of 1917 was unusually dry, the rainfall in that vicinity being something less than one-third of the normal. The weather was very warm and as a result the water in many of the lakes was at the lowest level. This condition continued to about March 1, 1918, when the water increased so that defendant at that time was able to furnish practically full service to all the cities and villages with which it had contracted, and since that time has complied with the terms of its contract with the plaintiff, as appears from statements of counsel in this court.

It appears from the showing made, that with 50 per cent of the normal flow of the river, together with its steam plants, the defendant could have furnished continuous service to all its patrons; that during the summer of 1917, when the flow of water became insufficient to meet the demands, the company began to install steam plants with which to supply the deficiency, but was prevented from completing the same by reason of the Federal government's having requisitioned the output of the factories for war purposes. That in November, 1916, the defendant placed contracts for a large generator and a 650 horse power water wheel for driving the same, for delivery by May 15, 1917; that the generator was received, but the construction of the water wheel was delayed by the Federal government's orders at the shop where it was being made; that at the time of the hearing in January, 1918, the construction of the wheel had been completed, but shipment thereof was prevented by the government; that while the defendant was furnishing lights and power from its plant at Wahpeton, North Dakota, to the towns of Barry, Beardsley and Browns Valley at certain hours during the day when plaintiff was not receiving service, in so doing it was giving service to about 2,000 people, and to furnish service from the same plant to the plaintiff would have necessitated the discontinuance of the service to those people; that the defendant owned and operated a plant at Graceville from which that village obtained service, but defendant was unable to supply the plain-

tiff with power from that plant as the fuel administrator had directed the closing down of the same during the hours in question.

The defendant admits its failure and inability to furnish plaintiff with lights and power as required in its contract. It seems to have put forth its best efforts to comply with the terms of the contract. There is no showing to the contrary. The contract contains the following provision:

"The power company shall use due diligence and care in furnishing light and power as above provided; but shall not be liable for any loss or damage which may arise from failure, either partial or total, of service."

The order requiring the defendant to furnish plaintiff electric light from 6 o'clock in the morning until 11 o'clock at night during the pendency of this action goes beyond the terms of the contract. The provision of the contract in this respect is that "the power company agrees to erect and operate a street lighting system in the Village of Clinton consisting of incandescent lamps to be lighted all night and every night during the year, or approximately 4,000 hours per year * * *." To comply with the order of the court would require a current for about 17 hours per day for lighting, while the contract calls for approximately 11 hours. The order goes beyond the requirements of the contract and is therefore unauthorized.

Reversed.